**NOT PRECEDENTIAL**

UNITED STATE COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3171
_____

UNITED STATES OF AMERICA

v.

ANTHONY JOHNSON, JR.,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2:08-cr-00285)
District Judge: Hon. Gustave Diamond
_____

Submitted Under Third Circuit LAR 34.1(a)
October 26, 2011

Before: FISHER, VANASKIE and ROTH *Circuit Judges*

(Filed: November 22, 2011)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Anthony Johnson, Jr., appeals his conviction on two counts of possession with

intent to deliver more than five grams of crack cocaine in violation of 21 U.S.C §

841(a)(1) and § 841(b)(1)(B)(iii), and one count of possessing a firearm "in relation to"

and "in furtherance" of a drug trafficking offense in violation of 18 U.S.C. § 924(c).

Johnson contends that the evidence is insufficient to sustain a conviction on any of the three counts. Johnson also contends the District Court incorrectly denied his motion to suppress evidence seized from his person and did not properly instruct the jury regarding the elements of a violation of 18 U.S.C. § 924(c). We reject these arguments and will affirm.

## I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we will relate only those facts necessary to our analysis.

Aliquippa Police Sergeant Robert Sealock was on routine patrol with another officer in a marked vehicle on August 23, 2007 at about 12:20 a.m., when he initiated a traffic stop of a Buick sedan being driven by Johnson. The Buick had dark-tinted windows in violation of 75 Pa. C.S. § 4524(e). Loud music was also coming from the vehicle.[1]

As Sergeant Sealock approached the car, he observed Johnson through the open driver's window leaning toward the passenger side of the vehicle. When Sergeant Sealock addressed him, Johnson appeared nervous, and was sweating and stuttering. Sealock recognized Johnson based upon prior encounters with him, and was aware that Johnson had been involved in several incidents involving firearms and that Johnson had

_____

[1] Johnson was charged in state court with disorderly conduct because of the loud music and with violating § 4524(e) of the Pennsylvania Motor Vehicle Code, which prohibits the operation of a vehicle with "any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa. C.S. § 4524(e).

been associated with drug traffickers. Sealock then observed an open box of plastic sandwich baggies inside the car. Based on his training and experience, Sealock knew that sandwich baggies are sometimes used to package narcotics.

Sergeant Sealock asked Johnson to step out of the car. Upon conducting a pat-down of Johnson's outer clothing, Sealock felt a large bulge in Johnson's right pocket, which, based on his experience, felt like crack cocaine. He retrieved a sandwich baggie from Johnson's right pocket and placed him under arrest. Sealock opened the baggie and counted eighty-seven individually-wrapped rocks. The eighty-seven rocks weighed 8.2 grams and were confirmed to be crack cocaine by the Pennsylvania Police Crime Lab. Sealock also found a cell phone and $160 on Johnson. The Buick was inventoried and no drug use items, such as crack pipes, were found in the car or on Johnson's person.

Johnson was stopped by Sergeant Sealock for a second time on March 5, 2008. Sealock, while responding to a call for back-up on an unrelated traffic stop, observed an Oldsmobile Alero pass a pick-up truck in a no-passing zone. Sealock activated his lights and siren to pass the Alero so he could proceed to the back-up site. The Alero did not move over to allow Sealock to pass. Instead, the Alero accelerated, traveling approximately 50 miles per hour in a 25 mile per hour speed zone while also speeding through a stop sign. The Alero eventually pulled over and Sealock nudged it with his police car. Johnson was driving the Alero and was the lone occupant of the vehicle. Johnson jumped out of the Alero and proceeded toward the middle of the road. Sealock caught Johnson and placed him under arrest. Sealock patted Johnson down and found three cell phones.

3

Officer Eric McPhilomy arrived on the scene and informed Sealock that he had observed crack cocaine inside the Alero. Sealock then looked inside the Alero with a flashlight and observed a piece of suspected crack cocaine inside a plastic baggie on the floor in front of the driver's seat. Sealock and McPhilomy took photographs of the scene and then had the Alero towed to a garage.

A search of the Alero on the afternoon of March 5, 2008, pursuant to a warrant resulted in the discovery of crack cocaine in a sandwich baggie and a handgun. The weapon was found under the driver's seat, with the handle facing towards the front of the car, in close proximity to the baggie of crack cocaine.[2] The handgun had been reported as stolen from a private residence on February 21, 2007, and is a firearm as defined by 18 U.S.C. § 921(a). A live magazine was inside the firearm with one round inside the chamber, operable and ready to fire. Johnson did not have a license to carry a firearm or a valid sportsman's firearms permit under Pennsylvania law.

On July 30, 2008, a grand jury in the Western District of Pennsylvania returned a three-count Superseding Indictment charging Johnson with two counts of possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) (Counts One and Two), and carrying a firearm in furtherance of and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Three). Johnson filed a Motion to Suppress Evidence, and a hearing was

_____

[2] It was subsequently learned that the owner of the Alero was Johnson's girlfriend, Lakeya Whatley. Ms. Whatley had been driven to the hospital in the Alero by Johnson on March 4, 2008, where she delivered a baby. Johnson had possession of the Alero throughout March 5, 2008. Ms. Whatley denied ownership of the crack and the firearm found in her car.

held on December 1, 2009.  By Opinion and Order filed on January 27, 2010, the District

Court denied Johnson's Motion to Suppress Evidence.  Johnson was tried by a jury

beginning on March 9, 2010, and found guilty on all counts on March 11, 2010.  On July

14, 2010, the District Court sentenced Johnson to a 120-month term of imprisonment,

consisting of 60 months on Counts One and Two plus a consecutive 60 months to be

served on Count Three.

## II.

We have jurisdiction over this appeal pursuant to 18 U.S.C. § 3742(a) and 28

U.S.C. § 1291.  We will first address Johnson's challenge to the sufficiency of evidence

to support his convictions.

## A.

Johnson moved for judgment of acquittal at the close of the Government's case

and at the close of testimony.  The District Court denied the motion.  When a sufficiency

of evidence challenge has first been made in the district court, we exercise plenary review

on appeal and ask "whether there is substantial evidence that, when viewed in the light

most favorable to the government, would allow a rational trier of fact to convict."  *United

States v. Bornman*, 559 F.3d 150, 152 (3d Cir. 2009) (quoting *United States v. Helbing*,

209 F.3d 226, 238 (3d Cir. 2000)).  Though plenary, the "standard of review is highly

deferential."  *Id.* (quoting *Helbing*, 209 F.3d at 238).

"A conviction for possession with intent to distribute drugs requires that the

defendant knowingly and intentionally possessed drugs with the intent to distribute

them."  *United States v. Iafelice*, 978 F.2d 92, 95 (3d Cir. 1992).  Johnson concedes that

5

he was found with crack cocaine on both dates. Proof of his intent to distribute the crack cocaine could be made through circumstantial evidence. *See United States v. Johnson*, 302 F.3d 139, 149 (3d Cir. 2002).

Michael Warfield, a seventeen-year veteran of the Pennsylvania State Police, testified as an expert, without objection by Johnson, regarding the characteristics of drug trafficking.[3] Warfield explained the process of cutting cocaine for distribution; the value of a "rock" of cocaine; how drug traffickers sell smaller quantities as street level dealers; the packaging of a rock of crack; and the significance of the presence of cash as well as the use of plastic baggies and multiple cell phones. Warfield also explained the role firearms play in the world of drug trafficking. Based on his experience and training, Warfield concluded that Johnson's possession of 5.6 grams of crack on March 5, 2008 and 8.2 grams of crack on August 23, 2007 was consistent with someone possessing drugs with the intent to distribute them. Warfield explained that with 8.2 grams of crack divided into 87 rocks, the rocks could have been sold for $870, if they were sold as ten-dollar rocks, or for over $1,700, if they were sold as twenty-dollar rocks. Warfield further testified that he would not expect someone who had eight grams or five grams of crack to be found with any drug paraphernalia because that person would be selling, not using, the drug. This evidence was plainly sufficient to support a finding of guilt on the drug trafficking offenses charged in Counts One and Two of the Superseding Indictment.

---

[3] We recognize that "operations of narcotics dealers is a proper field of expertise," an expert may testify about "the quantity, purity, usage dosage units, and street value of narcotics," and "experts may describe, in general and factual terms, the common practices of drug dealers." *United States v. Watson*, 260 F.3d 301, 306 (3d Cir. 2001).

Johnson also challenges the sufficiency of the evidence on Count Three, charging him with a violation of 18 U.S.C. § 924(c)(1)(A) by carrying a firearm during and in relation to a drug trafficking crime and possessing a firearm in furtherance of such a crime. To prove a violation of 18 U.S.C. § 924(c)(1)(A) arising out of possession of a firearm in furtherance of a drug trafficking crime, the government must prove: (1) the defendant committed the crime of possession with intent to distribute narcotics; (2) the defendant knowingly possessed a firearm; and (3) the defendant knowingly possessed the firearm in furtherance of the offense of possession with intent to distribute.[4] *United States v. Bobb*, 471 F.3d 491, 496 (3d Cir. 2006).

The first element is established by virtue of the jury's guilty verdict on Count Two of the Superseding Indictment. The second element, knowing possession of a firearm, may be established by actual or constructive possession. *See United States v. Cunningham*, 517 F.3d 175, 178 (3d Cir. 2008). "A person who, although not in actual possession, knowingly has both the *power and the intention* at a given time to exercise

---

[4] The elements the government must establish beyond a reasonable doubt to obtain a conviction for carrying a firearm *during and in relation* to a drug trafficking crime include the first two elements for possessing firearm *in furtherance* of a drug trafficking crime. The additional element that the firearm be carried during and in relation to a drug trafficking crime requires proof that the firearm "facilitate[d], or ha[d] the potential [to] facilitat[e]" the drug trafficking crime. *See United States v. Loney*, 219 F.3d 281, 287 (3d Cir. 2000) (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993)). We have acknowledged that "Congress may well have intended 'in furtherance' to impose a more stringent standard than 'in relation to.'" *Id.*; *see also United States v. Combs*, 369 F.3d 925, 932 (6th Cir. 2004) (noting that the "in furtherance" standard is a "slightly higher standard" and "encompass[es] the 'during and in relation to' language"). Because we find the evidence sufficient to sustain a conviction that Johnson possessed a firearm *in furtherance* of the drug trafficking crime, the evidence is also sufficient to sustain a conviction for carrying a firearm *during and in relation* to the drug trafficking crime.

7

dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." *United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999) (quoting *United States v. Blackstone*, 940 F.2d 877, 883 (3d Cir. 1991)). Dominion and control need not be exclusive, but they must be established by something more than "[m]ere proximity." *United States v. Introcaso*, 506 F.3d 260, 270-71 (3d Cir. 2007).

The third element of the charged crime requires an assessment of the totality of the evidence to determine whether "possession of the firearm advanced or helped forward a drug trafficking crime." *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004). The following non-exclusive factors may be considered in determining that a gun was possessed "in furtherance" of a drug trafficking crime: "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)).

With these factors in mind, and viewing the evidence in the light most favorable to the government, we conclude that the jury had sufficient evidence to support a conviction under 18 U.S.C. § 924(c)(1)(A). Johnson fled from the Aliquippa police on March 5, 2008 in an Oldsmobile Alero. Sergeant Sealock seized crack cocaine from the floor of the Alero and found a handgun under the driver's seat, with the handle facing towards the front of the car. The handgun is a firearm as defined by 18 U.S.C. § 921(a). A live

8

magazine was inside the firearm with one round inside the chamber, operable and ready to fire. The handgun had been reported as stolen and Johnson did not have a license to carry a firearm or a valid sportsman's firearms permit under Pennsylvania law. Although Johnson did not own the car, its owner—Johnson's girlfriend—denied ownership of the gun. It was quite reasonable for the jury to conclude that the weapon was placed strategically so that Johnson could defend his drugs and money. *See United States v. Lawrence*, 308 F.3d 623, 630 (6th Cir. 2002). Accordingly, Johnson's challenge to the sufficiency of the evidence on Count Three fails.

## B.

Johnson also contends the District Court committed plain error in its instructions to the jury regarding the elements of 18 U.S.C. § 924(c)(1)(A). Specifically, Johnson argues that the District Court erred by not instructing the jury that it must find that Johnson possessed a firearm both "in relation to" and "in furtherance of" drug trafficking activity because that is how the charge was described in the Superseding Indictment.

Johnson did not raise an objection to the District Court's instruction to the jury regarding a violation of 18 U.S.C. § 924(c)(1)(A). Therefore, we review for plain error, and will reverse only if the trial court committed error that was fundamental and highly prejudicial. *Alexander v. Riga*, 208 F.3d 419, 426-27 (3d Cir. 2000).

We have held that while an indictment employs the conjunctive, jury instructions may employ the disjunctive where, as here, the statute employs the disjunctive. *United States v. Cusumano*, 943 F.2d 305, 311 (3d Cir. 1991). The District Court instructed the jury on both the "in relation to" aspect of § 924(c)(1)(A), as well as the "in furtherance

9

of" aspect, explaining that a unanimous finding of guilt on either would be sufficient to convict Johnson under § 924(c)(1)(A). This instruction clearly survives plain error review.

C.

Finally, Johnson challenges the District Court's denial of his Motion to Suppress Evidence seized from his person by Sergeant Sealock on August 23, 2007. We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review of the District Court's application of the law to those facts. *United States v. Delfin-Colina*, 464 F.3d 392, 395-96 (3d Cir. 2006).

A traffic stop of a vehicle and the detention of its occupants is a "seizure" under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 809-10 (1996). A warrantless seizure based on less than probable cause is permissible "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the person with whom he is dealing may be armed and presently dangerous." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Under those circumstances, the officer "is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Id*.

The reasonable suspicion standard applies to routine traffic stops. *Delfin-Colina*, 464 F.3d at 397. The Government bears the initial burden of proving that authorities had specific, articulable facts to justify a reasonable suspicion that an individual has violated the traffic laws. *Id*. "'Reasonable suspicion' is a less demanding standard than probable

10

cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Only a "minimal level of objective justification" is necessary. *Id.*

The stop of the Buick was based on an articulable and reasonable suspicion that either the vehicle or an occupant violated the law. *See United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). Sergeant Sealock stopped Johnson's vehicle because of the tinted windows in violation of 75 Pa. C.S. § 4524(e) and the loud music. After pulling the car over, Sealock recognized Johnson and had concerns for his safety because of Johnson's association with individuals that traffic in narcotics. Sealock was also concerned for his safety because he knew Johnson had been involved in other incidents involving firearms. Sealock saw Johnson making a furtive movement by leaning toward the passenger side of the car. Johnson also appeared nervous, and was sweating and stuttering. Sealock then observed an open box of plastic sandwich bags inside the vehicle as he spoke with Johnson and he knew that plastic baggies are sometimes used in packaging narcotics. Sealock also knew that people who traffic in narcotics carry firearms "a lot of times." (A. 132.) Based on this knowledge, Sealock was concerned that Johnson may be armed and dangerous. Viewing these circumstances in their entirety, Sealock was justified in believing that Johnson may have been armed and dangerous, warranting a protective pat-down for a weapon.

Johnson contends that the purpose of the protective pat-down search was limited to a search for a weapon and that the seizure of crack cocaine exceeded the scope of the warrantless search. Police officers may seize non-threatening contraband detected during

11

a protective pat-down search "so long as the officers' search stays within the bounds marked by *Terry*." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993). In *United States v. Yamba*, we defined the scope of a "plain feel" search under *Dickerson* and determined that the proper inquiry "is not the immediacy and certainty with which an officer knows an object to be contraband or the amount of manipulation required to acquire that knowledge, but rather what the officer believes the object is by the time he concludes that it is not a weapon." 506 F.3d 251, 259 (3d Cir. 2007). As we explained in *Yamba*, it is permissible to confiscate contraband if "spontaneously discovered during a properly executed *Terry* search." *Id.* When determining whether the scope of a particular *Terry* search is proper, "the areas of focus should be whether the officer had probable cause to believe an object was contraband *before* he knew it not to be a weapon and whether he acquired that knowledge in a manner consistent with a routine frisk." *Id.* If the officer develops probable cause to believe, given his training and experience, that an object is contraband before he eliminates the possibility that it is a weapon, he may lawfully perform a more intrusive search, and if he discovers contraband, he may seize it and it will be admissible against the suspect. *Id.*

Viewing the totality of the circumstances, we are satisfied that Sergeant Sealock had probable cause to believe the object he felt in Johnson's pocket was contraband at the same moment or before he determined it was not a weapon. As in *Yamba*, Sealock's belief that the object he felt was crack cocaine "was reached quickly and upon minimal manipulation," consistent with a routine *Terry*-frisk. *See id.* at 260. Based on Sealock's experience and training, he was able to identify the object as contraband. In short,

12

Sealock was "able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant[ed] the intrusion." *Terry*, 392 U.S. at 21. Accordingly, the District Court did not err in denying Johnson's Motion to Suppress.

III.

For the foregoing reasons, we will affirm the conviction and judgment of the District Court.